# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL ACTION** |
| | ) | **NO.  08-CR-0429-01** |
| | ) | |
| **ALI AMIRNAZMI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION & ORDER

**RUFE, J.**                                                      **January 5, 2009**

On July 24, 2008, the Government filed an Indictment in this Court against Defendant Ali Amirnazmi.[1]  The Indictment charged Defendant with ten counts, including one count of conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"),[2] in violation of 18 U.S.C. § 371; four substantive counts of violating IEEPA, in violation of 50 U.S.C. § 1705(c), and of aiding and abetting the same, in violation of § 2; one count of conspiracy to act as an illegal agent of a foreign government in violation of the Foreign Agents Registration Act ("FARA")[3] and in violation of 18 U.S.C. § 371; one substantive count of acting as an illegal agent of a foreign government, in violation of 18 U.S.C. § 951, and of aiding and abetting the same, in violation of § 2; and three counts of making false statements to government officials in violation of 18 U.S.C. § 1001.  A Superseding Indictment was filed on October 2, 2008, charging Defendant with three additional counts of bank fraud in violation of 18 U.S.C. §

---

[1] Indictment [Document No. 1].

[2] 50 U.S.C. § 1705.

[3] 18 U.S.C. § 951.

1344, and supplementing the original Indictment with further factual allegations.[4]

Defendant now moves to dismiss portions of the Superseding Indictment against him.  He filed his first Motion on September 15, 2008, seeking the dismissal of Counts One through Seven of the Indictment.[5]  Defendant later filed a second Motion to dismiss either Count Nine or Count Ten of the Superseding Indictment as multiplicitous.[6]  For the reasons that follow, the Court will deny both of Defendant's Motions.

**<u>Statute of Limitations</u>**

The statute of limitations for violations of IEEPA and of FARA is five years.[7]  As a result, Defendant argues that the portions of the Superseding Indictment referencing conduct that occurred more than five years before Defendant's Indictment was filed should be dismissed as barred by the statute of limitations.[8]  The Superseding Indictment does include allegations of conduct occurring prior to July 24, 2003, and beyond the relevant statute of limitations. Dismissal of these portions of the Superseding Indictment would be justified unless the Government can demonstrate that Defendant's actions prior to July 24, 2003 were part of a continuing course of conduct with his actions occurring thereafter.[9]

With regard to the conspiracy charges against Defendant, the Third Circuit defines

---

[4] Superseding Indictment [Document No. 36].

[5] Motion to Dismiss Indictment ("Def.'s Mot. I") [Document No. 30].

[6] Motion to Dismiss Counts Nine and Ten of Superseding Indictment ("Def.'s Mot. II") [Document No. 63].

[7] <u>See</u> 18 U.S.C. § 3282(a).

[8] Defendant argued in error for the dismissal of all portions of the Indictment referencing conduct prior to July 25, 2003, rather than July 24, 2003.

[9] <u>Toussie v. United States</u>, 397 U.S. 112, 115 (1970).

conspiracy as "a continuing offense."[10]  The Third Circuit has also held that a jury can consider

all of defendant's actions in furtherance of a conspiracy so long as "the conspiracy, as

contemplated in the agreement as finally formulated, was still in existence . . . [and] at least one

overt act in furtherance of the conspiracy was performed" within the period of limitations.[11]

Thus, "the crucial question in determining whether the statute of limitations has run is the scope

of the conspiratorial agreement, for it is that which determines both the duration of the

conspiracy, and whether the act relied on as an overt act may properly be regarded as in

furtherance of the conspiracy."[12]

     As alleged in the Superseding Indictment, Defendant's conduct prior to July 24, 2003 is

closely tied to Defendant selling the National Petrochemical Company of Iran ("NPC") a license

to his ChemPlan software.[13]  Specifically, on November 26, 1996, Defendant received a fax from

NPC with inquiries regarding method of payment.[14]  Defendant signed a licensing agreement

with NPC on August 6, 1997.[15]  On or around June 1999, Defendant delivered ChemPlan

software updates to NPC.[16]  On August 1, 1999, Defendant sent an electronic mail message

---

[10] United States v. Jake, 281 F.3d 123, 129 n.6 (3d Cir. 2002) (citing United States v. Johnson, 165 F.2d 42, 45 (3d Cir. 1947).

[11] Grunewald v. United States, 353 U.S. 391, 397 (1957); see also Jake, 281 F.3d at 129 n.6.

[12] Grunewald, 353 U.S. at 397.

[13] Government's Response to Defendant's Pretrial Motions ("Gov't Resp.") [Document No. 41] at *5.

[14] Superseding Indictment, Count One, Overt Acts ¶ 1, Count Six, Overt Acts ¶ 1.

[15] Id. Count One, Overt Acts ¶ 2, Count Six, Overt Acts ¶ 2.

[16] Id. Count One, Overt Acts ¶ 3, Count Six, Overt Acts ¶ 3.

requesting an opportunity to brief NPC on ChemPlan.[17]  Defendant confirmed via an August 5, 2000 fax that NPC received computer software he had sent.[18]  On or around July 18, 2002, Defendant paid for the printing of materials to promote ChemPlan in Iran.[19]  The Superseding Indictment also alleges that Defendant lied to a United States government official on July 30, 2004 about his Iranian transactions, in what the Government claims was an attempt to conceal the same.[20]  Finally, the Superseding Indictment alleges that on or about May 28, 2008, a date clearly within the statute of limitations, Defendant signed an agreement with NPC for the use of the ChemPlan database and software system in exchange for a yearly monetary payment.[21]

It is significant that Defendant's actions before July 24, 2003 are all related to Defendant selling NPC the use of ChemPlan, and that an agreement to that same effect was signed by Defendant and NPC as recently as May 28, 2008.  The evidence at trial may shed additional light on whether Defendant's actions prior to July 24, 2003 were part of the same conspiracy as his later actions.  Nevertheless, at this time, based upon the allegations of the Superseding Indictment, Defendant's actions prior to July 24, 2003 are part of a single conspiracy, and part of a course of continuing conduct.  Hence, the Court will not dismiss the portions of the Superseding Indictment's conspiracy counts alleging wrongful conduct before July 24, 2003.  Moreover, as Defendant's actions prior to July 24, 2003 were part of a continuing course of

---

[17] Id. Count One, Overt Acts ¶ 4, Count Six, Overt Acts ¶ 4.

[18] Id. Count One, Overt Acts ¶ 5, Count Six, Overt Acts ¶ 5.

[19] Id. Count One, Overt Acts ¶ 6.

[20] Id. Count One, Overt Acts ¶ 7, Count Six, Overt Acts ¶ 6, Count Eight; see also Gov't Resp. at *5.

[21] Id. Count One, Overt Acts ¶ 11, Count Six, Overt Acts ¶ 12.

conduct, the Court will not dismiss the portions of the Superseding Indictment's substantive counts also alleging wrongful conduct before July 24, 2003.

**Constitutionality of IEEPA**

Defendant asserts that Counts One through Five alleging violations of IEEPA should be dismissed because the IEEPA regulations constitute an unconstitutional delegation of Congressional authority to the Executive branch.[22]  Defendant argues that IEEPA delegates unbridled discretion to the Executive to promulgate regulations amounting to criminal laws without providing "intelligible principles" upon which to base the same.[23]  This argument, however, has been uniformly rejected by the courts that have considered it.[24]  The Court finds the rationale of these other courts persuasive and will follow the same.

The Supreme Court articulated in United States v. Touby the limits of a lawful delegation of the power to define criminal conduct.[25]  By "defin[ing] the specific circumstances in which the President may act and to what extent," IEEPA subjects the Executive's discretion to constraints similar to those found sufficient in Touby.[26]  Moreover, an additional factor not present in Touby, namely the special power of the Executive to "make determinations regarding foreign policy,"

---

[22] Def.'s Mot. I at *4.

[23] Id. at *4-*6.

[24] See, e.g., United States v. Dhafir, 461 F.3d 211, 215-17 (2d Cir. 2006) (holding that IEEPA meaningfully constrained the President's discretion and that the authorities delegated under IEEPA were defined and limited); United States v. Arch Trading Co., 987 F.2d 1087, 1092-94 (4th Cir. 1993) (upholding IEEPA's delegation to the President to define criminal conduct upon finding sufficient constraints on IEEPA's delegation of Congressional power); United States v. Esfahani, No. 05-cr-0255, 2006 WL 163025 (N.D. Ill. January 17, 2006) at *3-*4 (same); Unied States v. Anvari-Hamedani, 378 F.Supp.2d 821, 827-830 (N.D. Ohio 2005) (finding the Fourth Circuit's analysis in Arch Trading Co. persuasive and holding the same).

[25] 500 U.S. 160, 165-67 (1991).

[26] See Dhafir, 461 F.3d at 216; Arch Trading Co., 987 F.2d at 1093.

weighs heavily in favor of upholding IEEPA.[27]  Congressional legislation involving foreign affairs "must often accord to the President a degree of discretion and freedom from statutory restriction which would not be admissible were domestic affairs alone involved."[28]  Therefore, given the intelligible principles in IEEPA constraining the Executive's discretion and IEEPA's relation to foreign affairs, IEEPA does not violate the nondelegation doctrine.

Defendant also contends that Congress has failed to obey its own oversight law requiring periodic meetings to "consider a vote on a joint resolution to determine whether that emergency shall be terminated."[29]  Defendant asserts that this failure indicates that the Executive's discretion is totally unsupervised and therefore unconstitutional.[30]  In Beacon Products Corporation v. Reagan, the First Circuit held that the President's declaration of a national emergency with respect to Nicaragua did not automatically terminate even though Congress never met in conformance with § 1622(b).[31]  In so holding, the First Circuit found that the "shall meet to consider a vote" language of § 1622(b) was meant "to give those who want to end the emergency the chance to force a vote on the issue, rather than to require those who do not want to end the

---

[27] See Arch Trading Co., 987 F.2d at 1094; see also Dhafir, 461 F.3d at 217.  Neither Defendant nor the Goverment argues that the other factor noted by the Second and Fourth Circuits, that Congress had enacted legislation codifying the sanctions against Iraq and therefore endorsed the Executive's actions, is applicable here.

[28] United States v. Curtiss-Wright Export Corp., et al., 299 U.S. 304, 320 (1936).

[29] The oversight law to which Defendant cites provides in its entirety as follows:

Not later than six months after a national emergency is declared, and not later than the end of each six-month period thereafter that such emergency continues, each House of Congress shall meet to consider a vote on a joint resolution to determine whether that emergency shall be terminated.

50 U.S.C. § 1622(b).

[30] Def.'s Mot. I at *6-*7.

[31] 814 F.2d 1, 4-5 (1st Cir. 1987)

emergency to force congressional action to prevent automatic termination."[32]   The Court agrees

with this construction of § 1622(b) and therefore declines to infer from Congress's failure to

meet that the Executive's discretion is either unsupervised or unconstitutional.   Hence, the Court

is unpersuaded by Defendant's argument that IEEPA is an unconstitutional delegation of

Congressional authority and thus, will not dismiss Counts One through Five on that basis.

**Sufficiency of Counts Six and Seven**

Counts Six and Seven of the Superseding Indictment allege, respectively, a conspiracy

count and a substantive count of Defendant acting as an illegal agent of a foreign government,

namely Iran, in violation of FARA.   Defendant contends that these counts should be dismissed as

the factual allegations of the Superseding Indictment do not demonstrate that Defendant acted

subject to the direction or control of a foreign government or official.[33]   The Court disagrees.

The "true test of the sufficiency of an indictment is not whether it could have been made more

definite and certain."[34]   Instead, an indictment is sufficient if it "'(1) contains the elements of the

offense intended to be charged, (2) sufficiently apprises the defendant of what he must be

prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may

plead a former acquittal or conviction in the event of a subsequent prosecution.'"[35]

---

[32] Id. at 5 (emphasis in original).

[33] Def.'s Mot. I at *7-*9.  Defendant also argues that he was attempting to engage in a legal commercial transaction, which is something specifically excluded from the statute's definition of foreign agents, and a further indication that the statute was not intended to ensnare persons doing business with an entity controlled by a foreign government.  (Def.'s Mot. I at *8-*9.)  While Defendant cites subsection (d)(4) in support of this proposition, he completely ignores subsection (e), under which a person engaged in a legal commercial transaction can still be considered the agent of a foreign government.  See 18 U.S.C. § 951(d)(4), (e).

[34] Hagner v. United States, 285 U.S. 427, 431 (1932).

[35] United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (quoting United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007)).

Here, the Superseding Indictment clearly states that Defendant acted at the direction and control of "various officials of the Government of Iran, including representatives of NPC and RIPI [Research Institute of Petroleum Industry]" and at the direction and control of "Iranian Official #1."[36]  In response, Defendant first argues that the representatives of NPC and RIPI do not qualify as a foreign government or officials.[37]  Whether the representatives of NPC and RIPI qualify as foreign government or officials is a factual determination that cannot be made at this time.  Second, Defendant contends that the factual allegations do not suggest that Defendant agreed to act subject to the direction and control of Iranian Official #1.  An indictment must provide "sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution."  The Superseding Indictment alleges that Defendant met several times with Iranian Official #1,[38] and that Defendant "took steps to coordinate efforts to conduct business in Iran with Iranian Official #1 and other representatives of the Iranian government based in Iran."[39]  These allegations are sufficient for Defendant not only to invoke double jeopardy but also to prepare his defense, which very well may be that such actions on his part do not translate to Defendant acting subject to the direction

---

[36] Superseding Indictment, Count Six, Manner and Means ¶¶ 4, 6.  The Court notes that Count Seven explicitly states that it realleges these same paragraphs.  (See Count Seven ¶ 1.)

[37] Defendant cites a section of the Code of Federal Regulations which provides:

The term foreign government includes any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than the United States, or over any part of such country, and includes any subdivision of any such group or agency to which such sovereign de factor or de jure authority or functions are directly or indirectly delegated. . . ."

28 C.F.R. § 73.1(b).

[38] Superseding Indictment, Count Six, Overt Acts ¶¶ 7, 8, 10, 11.

[39] Id. Count Seven ¶ 3.

and control of Iranian Official #1.   Thus, Counts Six and Seven of the Superseding Indictment are sufficiently pleaded and will not be dismissed.

**Multiplicity of Counts Nine and Ten**

In his second Motion, Defendant seeks to dismiss either Count Nine or Count Ten of the Superseding Indictment as multiplicitous.[40]  Count Nine of the Superseding Indictment alleges a false statement to IRS Special Agent Christopher Hueston, while Count Ten alleges a false statement to FBI Agent McAllister.[41]  Defendant argues that because Agent McAllister was present during Agent Hueston's interview of Defendant, Counts Nine and Ten are therefore multiplicitous.[42]  Although the Third Circuit has not addressed this issue, Defendant cites two cases from the Ninth Circuit[43] and one from the Eighth Circuit[44] holding that the government may charge separate violations for identical false statements under 18 U.S.C. § 1001 only if (1) the declarant was asked the same question and gave the same answer; and (2) the later false statement further impaired the operations of the government.  Without deciding whether to adopt this test, the Court agrees with the District of Columbia Circuit that this Motion would be better

---

[40] Defendant seemingly asks for the dismissal of both Counts Nine and Ten because they "impermissibly charge a single offense in two separate counts."  (Def.'s Mot. II at *3.)  Yet, even if Defendant demonstrates this to be true, this would result in the dismissal of only one of the counts as multiplicitous, rather than both.  Thus, the Court will construe Defendant's Motion as seeking the dismissal of either Count Nine or Count Ten.

[41] Superseding Indictment, Count Nine ¶ 2, Count Ten ¶ 2; Def.'s Mot. II at *1-*2.

[42] Def.'s Mot. II at *3.

[43] United States v. Stewart, 420 F.3d 1007, 1013 (9th Cir. 2005); United States v. Olsowy, 836 F.2d 439, 443 (9th Cir. 1987).   Although the Third Circuit has not ruled upon this issue, the Court notes that the Second Circuit has implicitly endorsed Olsowy.  See United States v. Wu, 419 F.3d 142, 147 (2d Cir. 2005) (citing United States v. Roshko, 949 F.2d 9, 12 (2d Cir. 1992)).

[44] United States v. Trent, 949 F.2d 998, 1000 (8th Cir. 1991).

resolved post-trial.[45]  After a record is developed, it will be clear "what statements were made

and what acts of concealment were committed, as well as whether the later acts or statements

further impaired the operations of government."[46]  Thus, the Court will dismiss Defendant's

Motion to Dismiss Counts Nine and Ten of Superseding Indictment without prejudice and with

leave to renew.

        An appropriate Order follows.

---

[45] This is not to say that Defendant must wait until after the jury has rendered its verdict before renewing this Motion.

[46] United States v. Hubbell, 177 F.3d 11, 14 (D.C. Cir. 1999).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL ACTION** |
| | ) | **NO.  08-CR-0429-01** |
| | ) | |
| **ALI AMIRNAZMI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

**<u>ORDER</u>**

**AND NOW**, this 5th day of January, 2009, upon consideration of Defendant's "Motion to Dismiss Indictment" [Document No. 30], the Government's response [Document No. 41], and Defendant's reply [Document No. 44], and after hearing in court and oral argument thereon, it is hereby **ORDERED** that Defendant's Motion to Dismiss Counts One Through Seven is **DENIED**.  Upon consideration of Defendant's "Motion to Dismiss Counts Nine and Ten of Superseding Indictment" [Document No. 63] and the Government's response [Document No. 64], it is **FURTHER ORDERED** that Defendant's Motion to Dismiss Counts Nine or Ten is **DENIED WITHOUT PREJUDICE** and with leave to renew after the Government's evidence is received at trial.

It is so **ORDERED**.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____
**CYNTHIA M. RUFE, J.**